AYRES, Judge.
This is a companion case to that of Barker v. Phoenix Insurance Company, of the docket of this court and with which it was consolidated for trial, and which was this day decided (220 So.2d 720).
By this action plaintiff Mrs. Emma B. Hicks seeks to recover damages for personal injuries sustained in the accident described in the companion case, and plaintiff J. C. Hicks, for reimbursement of medical expenses incurred, and those likely to be incurred in the future, for the treatment of his wife’s injuries and for the loss of her wages.
Defendants in this action include, in addition to West-Clark Motors, Inc., Elton Caswell, and Chrysler Corporation and their insurers, Charles R. Barker and Mrs. Vivian C. Barker, plaintiffs in the companion case, and their insurer. Chrysler Corporation and its insurer were exonerated by a summary judgment from which no appeal was taken.
The question of liability was determined in the companion case. There only remains for consideration the quantum of the awards to which plaintiffs are entitled.
Mrs. Hicks, after having been given emergency treatment at the Minden Sanitarium, was transferred to the Schumpert Memorial Hospital, in Shreveport, where she was first seen in the emergency room by Dr. Ray E. King, an orthopedist. Her injuries were described generally as multiple fractures of her left femur, hip, left forearm, and pelvis, and a laceration over the top of her head. X-rays were made, after which she was admitted to the hospital and prepared for surgery. Mrs. Hicks was in a state of shock, had been unconscious, and remained in a semiconscious state for two or three days.
Surgery was performed under a general anesthetic. The three fractures in the femur, two in the pelvis, and a fracture in both bones of the forearm required open operations for their reduction. A Smith-Peterson nail was inserted in her hip and a Thornton plate, requiring eight screws, was used in the femur. A pin was likewise used in the ulna and a plate on the radius. The pelvic breaks were described as fractures through the ischium and pubes of the pelvic ring. There were a subtrochanteric fracture of the hip, a cardinal fracture in the femoral neck and a fracture through the midportion of the femoral shaft, the latter being about half way between the hip and the knee.
The operation itself inflicted severe trauma, particularly since the fractures were of a comminuted and fragmented type. Moreover, the surgery intensified the trauma produced by the accident itself. The reduction of these fractures by the use of plates, pins, and screws required the cutting of various muscles and going between others to reach the bones. This was true of the arm as well as of the hip and leg. The plates inserted were of stainless steel inches in size.
For the removal of the metal from plaintiff’s body, a similar operation was performed November 3, 1966. This required that the muscles of the leg and hip be *728 cut and separated again to reach the bones; the plate in the arm was not removed. A bursa developed above that plate.
Mrs. Hicks was confined to the hospital following each of the operations for a period of approximately a month. For a time she could walk only with crutches. Pain, soreness, and discomfort, more than the usual type and intensity accompanying injuries of this kind and their treatment, were experienced by plaintiff.
In December, 1967, plaintiff continued to experience pain. Backache developed, radiating into her left hip; discomfort persisted in her left forearm. The examination disclosed a lordosis, that is, an increased lumbar curvature, voluntary muscle spasm at the lumbosacral joint, and pain over the left erector spinae muscle group in the low back area. A surgical corset was prescribed for her as early as January, 1967, and its continued use was advised.
Under an examination of February 2, 1968, the doctor found that the low back pains were persisting. There was weakness of the left lower extremities and of the left forearm. There was a quarter inch shortening of the left leg as compared to the right and a half inch atrophy of the left calf and thigh. There was full flexion and extension of the left hip joint but rotation was diminished by 20 percent. There was half inch atrophy of the left forearm and left upper arm. Crepitation persisted over the plate in the radius of the arm due to a bursal formation. Disability in her lower extremities was placed at 20-25 percent and she was classified as disabled to perform work requiring constant walking or standing. Continued disability and weakness in the arm, with the retained metal, were to be expected.
Plaintiff was in bed and in a wheelchair for 21/2 months following the accident, and in a wheelchair and on crutches for an additional four months. She only began weight-bearing on the leg seven months following the accident. The use of crutches was required for a time following the second operation.
Plaintiff, 35 years of age at the time of the accident, led an active life. She and her husband lived in rural communities. She did her homework without the assistance of a maid, assisted in cultivating a garden, and reared four children. For three years prior to the accident she worked during the school year in a school cafeteria and, during the summer months, at a Dairy Queen. Prior to her injuries, she had made application for employment at a poultry processing plant. She had been notified to report for work and was en route there when the accident occurred. For employment at the school cafeteria, she was paid about $125.00 per month. The rate of pay at her prospective employment was in accordance with the prescribed minimum pay scale.
Based on the above findings as to Mrs. Hicks’ injuries, the pain and suffering experienced and that which will probably be endured in the future, as well as her disfigurement and permanent disability, we conclude that $40,000.00 is warranted for her compensation.
Plaintiff J. C. Hicks seeks recovery ,for hospital, medical, and other expenses incidental to his wife’s injuries, for future surgery in connection with removal of the metal from her arm, and for future drugs and corset maintenance, all in the sum of $3,353.09. Claim is also made for loss of Mrs. Hicks’ future wages. This latter item is predicated upon the minimum FLSA scale and a life “working expectancy” of 25 years. In considering this claim we must note that Mrs. Hicks was not regularly employed and that she had not performed a single day’s work at the poultry processing plant where she contemplated obtaining employment. She was inexperienced in that kind of work and whether she would have been permanently employed there is a matter of speculation and conjecture. Under these circumstances, we are unable to ascertain *729 with any degree of certainty what losses, if any, in wages would have been sustained.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed there be judgment herein in favor of Mrs. Emma B. Hicks in the sum of $40,000.00 and in favor of plaintiff J. C. Hicks in the sum of $3,353.09, both against West-Clark Motors, Inc., and The Phoenix Insurance Company, in solido, with 5 percent per annum interest on each of said sums from judicial demand until paid, and for all costs, including the cost of this appeal and an expert witness fee for Dr. Ray E. King in the sum of $100.00.
Reversed and rendered.
Rehearing denied.
PRICE, J., dissents from refusal.